NORTHPORT WESLEYAN GROVE CAMPMEETING ASSOCIATION

*vs.*

CHESTER PERKINS.

Waldo.     Opinion November 25, 1899.

*Campmeeting Associations.     Tax.     License.     Regulations.     Priv. and Spec. Laws,*
*1873, c. 319.*

A campmeeting association, that has laid out its grounds into cottage lots, streets and squares and has made perpetual leases of the lots without other restriction than that they are " subject to such rules and regulations as the association may from time to time adopt," cannot afterward, for revenue purposes impose a license tax on persons visiting the occupants of cottages on such lots to obtain orders for family supplies.

AGREED STATEMENT OF FACTS.

The case appears in the opinion.

*W. P. Thompson,* for plaintiff.

Such a license may be verbal or inferred from circumstances. It is an authority given to do some one act or a series of acts on the land of another without passing any interest in the land. *Harmon* v. *Harmon,* 61 Maine, 222 ; *Cook* v. *Stearns,* 11 Mass. 537.

The condition upon which the defendant was permitted to use the plaintiff's land was reasonable and one which the plaintiff had a legal right to impose. It made legal, acts of the defendant which otherwise would have been illegal, and gave him the right to do certain things which without such license would have been trespass.

If the defendant had paid the plaintiff for the privilege of using its land for such purpose and the plaintiff had revoked the license and refused to allow the use thereof, the defendant could have maintained an action against the plaintiff on the contract; therefore, it must follow that this action is maintainable. It was of great and beneficial importance to the defendant to have the privilege of going upon the plaintiff's land for the purposes of trade;

and the pay therefor important to the plaintiff in the way of revenue necessary to maintain operations upon their grounds.

The plaintiff corporation has expended large sums of money, so beautified and adorned the grounds that it has become quite a famous and a very desirable resort for people during the summer season.

The cottage lots are all leased subject to the rules and regulations adopted by the plaintiff corporation, among which are the rules mentioned. The association has never surrendered its control and management of this camp-ground and has the same right to impose conditions as to the use thereof by strangers, as though no lots had been leased. It is a part of their system of management and one of the sources of obtaining revenue to enable the association to continue. The association owns a store upon said grounds and it is reasonable for outsiders to pay for the privilege of competing with the proprietor of this store.

*R. F. and J. R. Dunton*, for defendant.

The power to license and regulate corporations is conferred solely for police purposes, and municipal corporations have no power to use it as a means for increasing their revenue. 2 Beach, Pub. Corp. § 255.

If this license were imposed as a police regulation, and not for the principal and avowed purpose of raising revenue, the plaintiff would have no right to exact a license fee from the defendant, who is not a resident of the plaintiff's grounds, notwithstanding that he did business with the residents within said grounds. Under a statute empowering cities to levy license taxes on attorneys residing therein, a city may not levy such taxes on attorneys not residing therein, but having offices and doing business therein. 2 Beach, Pub. Corp. § 1252.

Grants of this kind are to be strictly construed, and if the plaintiff's charter by implication gives it power to levy upon the residents of its grounds, that power cannot be enlarged by any by-law so as to extend to non-residents doing business therein.

"A grant of police power can never be taken to authorize ordi-

nances upon some subject which is partially or imperfectly given to the control of the corporation by an express grant. For this shows that the legislative mind was specially directed to the subject and the grant must be taken as the limit of its intention." Ib. § 1249.

But if this plaintiff corporation had a legal power under its charter to enact license ordinances, it has not legally exercised that power. License ordinances, to be valid, must name and fix a definite license fee which all persons engaged in like business shall pay, and should state the time of duration and validity of the license to be issued. The plaintiff, without right, has delegated all its powers to its trustees, and its trustees have passed a license ordinance in which no definite license fee is named, and no time of duration of license, but has left all this to the discretion of the superintendent, and under said ordinance, he has discretionary power to collect or not collect of any person at his pleasure.

The power to issue a license cannot be delegated by the council, unless there be express authority for such delegation. Ib. § 1254.

The plaintiff, even if it had power to issue license, had no right to delegate this power to the trustees, and much less had the trustees authority to delegate this power to the superintendent to be exercised at his discretion. "The rule may be considered universal that no judicial discretion may be conferred upon an officer issuing the license." Ib. § 1254.

The avowed purpose of imposing this license would render the vote of the trustees under which this suit is brought invalid, for this vote directs the levy of a license tax, the avowed and principal object of which is the raising of revenue. Ib. § 1255.

The plaintiff has exercised a power not given it by law, but contrary to common law, and the constitution of the state, which declares " that no tax or duty shall be imposed without the consent of the people, or their representatives in the legislature."

The defendant in visiting his customers, the plaintiff's lessees, for the purpose of taking orders for goods, and in delivering goods in accordance with their orders, was, by their patronage, invited to visit their houses on said grounds to transact this business with

them, and if any license were needed, they, by their patronage, have given the defendant a license, and they are the only persons competent to license any one to enter their houses or the approaches thereto; and the fact that he was their licensee, gives him full authority to use, in going to and from their said houses, the plaintiff's said streets, which are open to public travel.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

EMERY, J.    The Wesleyan Grove Campmeeting Association was incorporated by special act of the legislature, approved February 19, 1873, to be composed of the presiding elders of the Methodist Episcopal Church of the East Maine Conference with the preachers under their charge, and with the tent masters from Methodist Episcopal Societies. It was empowered to acquire real and personal property and to sell the same, and "to establish such by-laws and regulations as are necessary for the further and proper management of their affairs, consistent with the laws of this State." The principal purpose of the corporators was to acquire and manage real estate for campmeeting purposes.    The corporation afterward acquired the fee in that tract of land in Northport known as the "Northport Camp Ground," and which is a well known summer resort.    It laid out this land into cottage lots, with streets, squares, etc., and has leased the most of these lots in perpetuum to the owners of cottages thereon.    The most of the cottages on the lots thus perpetually leased are occupied by their owners or others during the summer season.    The streets leading through and across the grounds are open to public travel, except during campmeeting week when toll is taken at the entrance to the grounds.    The only restriction stated in the case as existing in the perpetual leases is that they are "subject to such rules and regulations as the Association may from time to time adopt."

The defendant has a place of business outside of, but near, these grounds of the Association where he sells groceries, fruits and provisions, mainly of course to the summer-residents on the grounds.

He has been wont to go round to the cottages occupied by his customers upon the grounds and take orders for his goods, which orders he filled at his store outside the grounds and then delivered the goods so ordered to his customers at their cottages on the grounds. In doing this he passed over the streets on the grounds open (except during campmeeting week) to public travel. The plaintiff association owned a store on the grounds for the sale of various goods, which it leased for a rental.

In 1898, the trustees of the association voted that "any person or persons taking any order or orders for goods, wares, merchandise, fruit or produce, or peddling groceries upon said grounds shall pay the sum of fifteen dollars for the season." The defendant was duly apprised of this new rule, but continued to visit his customers upon the grounds and take their orders for goods, and refused to pay the fifteen dollars. This action is to recover that sum.

The question raised by the parties in the statement of the case is whether the trustees can lawfully impose this revenue tax on the business of taking orders for fruit, groceries and provisions from cottagers upon the grounds of the association, there being no suggestion of any other purpose of the vote.

It is common knowledge that it is now an almost universal practice in cities, villages and summer resorts, for dealers in such articles to go or send to the residences of the customers for orders for goods to be delivered there. The great convenience and comfort of this practice to families, especially those in summer cottages, are obvious. If the trustees of the plaintiff association can impose a revenue tax on that practice they can make the tax so high as to break it up, and compel the occupants of the cottages on the lots held by them under perpetual leases, to trade exclusively with some favored dealer on the grounds, or to go some distance to find a dealer outside of the grounds. Clearly the cottagers cannot be subjected to such arbitrary power unless it is plainly expressed in the terms of the leases under which they occupy. The only condition or restriction in the leases stated in the case is, that they are "subject to such rules and regulations as the asso-

ciation may from time to time adopt." What the context might show we do not know. We are confined to the particular extract stated.

We think that condition or restriction imports only rules and regulations of a police nature, such as may be adopted for the preservation or improvement of the health, morals, religion, comfort and convenience of all the occupants of the grounds. We do not think it can be extended to include an indefinite power to impose taxes directly or indirectly upon the cottagers at the discretion of the trustees, or even to abridge their comfort or convenience for mere purposes of revenue to the association, when the enjoyment of that comfort or convenience is in no way hurtful to the health, morals, religious sentiment, comfort or convenience of that particular community.

It is argued that the tax is imposed upon the grocer, not on the cottager, and that the association is under no obligation to the grocer and can exclude him from the grounds entirely, or impose upon him any conditions of entrance including the payment of a revenue license fee.

The power of the association is not so absolute as that. It has laid out its grounds into lots, streets and squares, and has invited people to take leases of lots, build cottages thereon, and occupy them as residents. It has thrown open the streets and squares to the the free use of all persons occupying the cottages or having business or social relations with the cottagers, at all times except during camp-meeting week, when a toll is charged at the entrance. This state of things has existed for more than twenty years. While, as before stated, the association has retained full power to make reasonable rules and regulations of a police nature, it has not apparently reserved, if it ever possessed, the power to prevent the use of the streets by the cottagers or by those having business or social relations with them, or to impose a tax for such use in the ordinary intercourse of life, or in other words, to shut off, or impose revenue conditions upon, the intercourse of the cottagers with the rest of the town or state.

It is again argued that the charter gave the association authority

"to establish such by-laws and regulations as are necessary for the further and proper management of their affairs," and that license fees like that imposed in this case are necessary for requisite revenue. Granting, for the purpose of the argument only, that in making its leases and opening its streets, etc., the association might have reserved the power to impose such license fees as conditions or restrictions, it does not appear to have done so. The rights of the cottagers in their cottages and in the streets, and to the use of them for business and social intercourse acquired under the perpetual leases of the lots, cannot now be abridged without their consent to enable the association to raise a revenue. A corporation has no power to adopt rules or regulations injuriously affecting the rights of others under prior contracts, by annexing conditions not embraced in the contracts. *Illinois Conference Female College* v. *Cooper*, 25 Ill. 148.

*Plaintiff nonsuit.*